FILED

2006 Aug-14  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **VIDALIA DOCK AND STORAGE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO. CV 04-B-2586-S** |
| **vs.** ) | |
| ) | |
| **RED ROCK USA, LLC; LONNIE SHEPARD,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

This case is before the court on plaintiff/counterclaim defendant Vidalia Dock and

Storage, Inc.'s Motion for Summary Judgment, (doc. 31),[1] and Motion to Strike Lonnie

Shepard's and Red Rock's Statement of Undisputed Facts and Evidentiary Submission,

(doc. 44).  Upon consideration of the record, the submissions of the parties, the arguments

of counsel, and the relevant law, the court is of the opinion that the Motion for Summary

Judgment is due to be granted in part and denied in part, and the Motion to Strike is due

to be denied.

**I.  MOTION TO STRIKE**

Vidalia moves the court to strike Exhibits 2, 3, 5, 8, 9, 10, 11, 12, 14, 15, 16, 17,

18, 19, and 20 from Shepard's and Red Rock's Evidentiary Submission as well as the

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to
each document as it is filed in the court's record.

factual allegations relying on those Exhibits.  As grounds for its Motion, Vidalia argues

that many of the exhibits are documents which have not been authenticated, contain

hearsay, and/or are irrelevant.  With regard to Exhibit 17, the Affidavit of Donnie

Naramore, Vidalia contends it is non-compliant with Rule 56(e) of the Federal Rules of

Civil Procedure covering affidavits submitted at summary judgment.

Several of the exhibits were authenticated by a witness in deposition: Exhibits 2,

and 3 by Carla Jenkins (Vidalia's Evidentiary Submission in Support of Motion for

Summary Judgment, Ex. C, Carla Jenkins Depo., Ex. 3, 4); Exhibit 5 by Rusty Jenkins

(Red Rock's and Sheppard's Evidentiary Submission in Opposition to Summary

Judgment, Ex. 7, Rusty Jenkins Depo., Def.'s Ex. 17); Exhibits 8, 9, and 14 by Kathy

Love (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment,

Ex. J, Kathy Love Depo., at 18-19, 25,62-64); and Exhibits 15, 16, and 18 by Bettye

Jenkins, (Id., Ex. C, Bettye Jenkins Depo., at 105, Ex. 2).  Exhibits 2, 3, 8, 9, 10, 11, 14,

18, and 19 bear a "ULC" (presumably Union Land Company) bates stamp number, an

indicia of authenticity.

Generally, documents must be properly authenticated in order for them to be

considered on summary judgment.  See Fed.R.Civ.P. 56(e).  The Eleventh Circuit has

held that "[t]he nonmoving party, however, need not produce evidence *in a form* that

would be admissible at trial to avoid summary judgment; instead its evidence must be

reducible to admissible evidence."  *U.S. v. Four Parcels of Real Property in Greene and*

*Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1444 (11th Cir. 1991)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (internal quotation marks

omitted; emphasis in original.)  Because it appears that Red Rock and Shepard will be

able to authenticate or otherwise reduce their evidence to admissible form at trial, the

Motion to Strike, (doc. 44), will be denied.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.        SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "bears the

initial burden to show the district court, by reference to materials on file, that there are

no genuine issues of material fact that should be decided at trial.  Only when that

burden has been met does the burden shift to the nonmoving party to demonstrate that

there is indeed a material issue of fact that precludes summary judgment."  *Clark v.

Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress &

Co.*, 398 U.S. 144, 157 (1970).  The movant can meet this burden by presenting

evidence showing there is no dispute of material fact, or by showing the nonmoving

party has failed to present evidence in support of some element of his case on which he

bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23.

Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show either by affidavits, depositions, or discovery responses on file that there exist "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324.  The nonmoving party need not present evidence in a form necessary for admission at trial, however he may not merely rest on his pleadings.  *Id.*  "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608.  After a properly made motion has been presented and the court has allowed appropriate responses to be submitted, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

## B.      FACTUAL SUMMARY[2]

Vidalia Dock and Storage, Inc. ("Vidalia") is a closely held Mississippi corporation, the principal stockholder of which is Hyde Dunbar Jenkins, who also serves as a director and Vice President of the corporation.  (Counterclaim, Doc.10, at 2, ¶ 3.)

---

[2] As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Red Rock and Shepard, the non-moving parties.  All disputed facts are resolved in their favor and all reasonable inferences arising from those facts are drawn in their favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

Hyde Jenkins's wife, Bettye Jenkins, his son, Rusty Jenkins, and his daughter, Carla Jenkins, are also involved with the operation of the corporation.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. Q, Hyde Jenkins Depo., at 41-42.)  Vidalia's primary business is transporting various commodities by tug boat and barge on the waterways of the southeastern United States, but Vidalia has also, at times, been and in the mining business.[3]  (*See*, Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. M.)

Red Rock USA, L.L.C. ("Red Rock") is a mining operation, of which Lonnie Shepard is the majority owner and managing member, which provides "redrock" stone for use as aggregate in manufacturing concrete, asphalt and other road construction materials. (Counterclaim, Doc. 10, at 1, ¶¶ 1-2.)   In addition to their involvement and/or ownership interests in Vidalia, Hyde Jenkins, Carla Jenkins, and Rusty Jenkins also each have approximately an 11% ownership interest in Red Rock.  (Id., ¶ 6.)  Red Rock was founded and established for the sole purpose of entering into an agreement with United Land Corporation ("United Land") to remove, process and sell rock from the large deposits of redrock located on the "Bessie Mines" land owned by United Land in Jefferson County, Alabama.  (Id., at 2, ¶ 4.)  The contract with United Land for the rights to "Bessie Mines" is Red Rock's primary asset.

---

[3] Hyde Jenkins, Rusty Jenkins, and Carla Jenkins are also in the mining business by way of their ownership interest in Red Rock.  (Counterclaim, Doc. 10, at 1, ¶ 6.)

In or about April, 2004, Vidalia and Red Rock entered into an agreement by which Vidalia would transport the redrock mined by Red Rock from the port of Birminghamport, Alabama, to Red Rock's customers throughout the southeastern United States.  (Counterclaim, Doc. 10, at 2, ¶ 5; Complaint, Doc. 1, at 3, ¶ 13.)  This lawsuit originated out of the parties' disagreement as to the terms of that contract.

On August 27, 2004 Vidalia filed its Complaint, alleging that Red Rock breached the parties' contract by failing to pay for barge services provided to Vidalia by Red Rock. (Complaint, Doc. 1.)  On February 22, 2005, by leave of the court, defendants filed a Counterclaim alleging claims against Vidalia for intentional interference with Red Rock's business relationship with United Land Company, civil conspiracy and abuse of process. (*See*, Doc. 10.)  Plaintiff/counterclaim defendant Vidalia now moves the court for summary judgment on Red Rock's and Shepard's counterclaims.  (Vidalia's Motion for Summary Judgment, Doc. 31.)  Those claims will therefore be the subject of this Opinion.

Red Rock and Shepard allege that Carla and Rusty Jenkins, on behalf of Vidalia, engaged in a series of secret communications with United Land Company designed to disparage Red Rock and Shepard so that Vidalia could ultimately take over the valuable lease of "Bessie Mines." (Counterclaim, Doc. 10, at 3, ¶ 9.)  First, Red Rock and Shepard allege that, during the Summer of 2004, Red Rock wired funds to Carla Jenkins to pay the premiums on certain insurance policies, and that Vidalia purposefully failed to pay Red Rock's insurance premiums, in an effort to cause Red Rock's insurance coverage to lapse.

6

(Counterclaim, Doc. 10, at 3, ¶ 10.)

Soon thereafter, on August 18, 2004, Rusty Jenkins wrote a letter to United Land, which Red Rock and Shepard allege "defamed and disparaged Red Rock and Shepard in an effort to undermine and interfere with Red Rock's business relationship with United [Land]." (Counterclaim, Doc. 10, at 4, ¶ 11.)  The letter was addressed to Kathy Love, Vice-President of United Land, and was written by Rusty Jenkins on behalf of himself, Carla Jenkins, and Hyde Jenkins, purportedly in their capacity as minority stockholders of Red Rock.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. M.) Red Rock and Shepard contend that the letter was written on behalf of Vidalia. (Counterclaim, Doc. 10, at 4, ¶ 11.)  The letter stated that Rusty, Carla and Hyde were currently engaged in an internal audit and review of the records of Red Rock "after discovering a myriad of gross irregularities in the operation and management of the company by the managing partner, Lonnie Shepard, Sr."  (*Id*.)  As an example of the alleged mismanagement, the letter explained that, because Shepard had failed to pay insurance premiums, Red Rock's insurance policies had likely been cancelled.  (*Id*.) Rusty also went into some detail about Shepard's failure to pay certain creditors, including Vidalia, and that he has also failed to pay Red Rock's payroll taxes.  (*Id*.)  One of the closing paragraphs of the letter states: "So, he has no insurance, money, credibility, equipment, fuel, or protected employees. . . .  He has managed to completely scuttle a deal that would be the making of the red rock industry.  Other than that, he is one hell of a

7

businessman." (*Id*.)

On August 27, 2004, Vidalia commenced the present action against Red Rock for, *inter alia*, breach of contract, claiming that Red Rock owed Vidalia more than $258,271.62 for barging services rendered. (*See*, Complaint, Doc. 1, at 6, ¶ 28.) Red Rock and Shepard contend that Vidalia had significantly inflated the actual amount Red Rock owed to Vidalia as a part of its continuing effort to make Red Rock appear to be in poor financial condition. (Counterclaim, Doc. 10, at 4, ¶ 12.) On September 3, 2004, two weeks before serving the Complaint in this action on Red Rock, Rusty Jenkins, Carla Jenkins, and Hyde Jenkins wrote a second letter to United Land by which they informed United Land that the action had been filed. (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. N.) In the letter, they stated twice that it was their intention to place Red Rock into involuntary bankruptcy. (*Id*.) They also requested that United Land lock the gate to the "Bessie Mines" property and that no one be permitted to take rock out of the site so that, effectively, Red Rock could not conduct business. (*Id*.)

In response to the September 3, 2004 letter, United Land sent Shepard and Carla Jenkins an email in which she informed both parties that until this matter is resolved, "no parties will be allowed access to properties permitted to Red Rock USA, LLC by United Land Corporation without express written permission of United Land Corporation. Access gates have been locked and 'No Trespassing' signs posted." (Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 14.)

During the week of September 6, 2004, Carla Jenkins and another Vidalia employee, Kenneth Lilliman, traveled to Alabama to meet with United Land to negotiate a contract for the mining rights to the "Bessie Mines" site in order to fulfill a contract Vidalia was under to sell red rock to a company called Martin Marietta.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. J, Kathy Love Depo., at 58-59.)

On September 9, 2004, a letter signed by Carla Jenkins and Hyde Jenkins was faxed from Vidalia's offices to United Land.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. P.)  The letter purported to cancel Red Rock's mining lease with United Land.  The next day, on September 10, 2004, United Land faxed two letters to Carla Jenkins.  The first was a letter declaring that Red Rock's mining lease with United Land had been cancelled, per Carla's request.  (*Id*.)  The second was a letter of intent addressed to "To Whom it May Concern" stating that "Vidalia Dock and Storage . . . is currently in negotiations with United Land Corporation . . . to secure a permit for the removal of red rock from real property . . . commonly referred to as 'Bessie Mines.'" (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. R.)  Kathy Love testified that her understanding was that Carla and Kenneth Lilliman requested the letter of intent so that Vidalia would not lose its contract with Martin Marietta.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. J, at 58.)

On September 15, 2004, Carla Jenkins and Kenneth Lilliman formed a new limited

liability company Red Stone LLC ("Red Stone"), (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. T), which Red Rock and Shepard contend was created for the purpose of assuming the business of Red Rock.  (Counterclaim, Doc. 10, at 7, ¶ 19.)

> 1.    **Agency**

In its Motion for Summary Judgment, Vidalia first contends that it cannot be held liable for the actions of Rusty Jenkins and Carla Jenkins because neither was an agent of Vidalia, and neither had the authority to act on behalf of Vidalia with regard to the activities which are the subject of Red Rock's and Shepard's counterclaims.

The Alabama Supreme Court stated the controlling principles of agency law in *Malmberg v. American Honda Motor Co., Inc.*, 644 So.2d 888, 890 (Ala. 1994):

> Agency is generally a question of fact to be determined by the trier of fact. See *Oliver v. Taylor*, 394 So.2d 945 (Ala. 1981).  When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency.  *Carlton v. Alabama Dairy Queen, Inc.*, 529 So.2d 921 (Ala. 1988); *Wood v. Shell Oil Co.*, 495 So.2d 1034 (Ala. 1986). . .  How the parties characterize their relationship is of no consequence; it is the facts of the relationship that control.  *Martin v. Goodies Distribution*, 695 So.2d 1175, 1177 (Ala. 1997).

Vidalia maintains that neither Rusty Jenkins nor Carla Jenkins had actual authority to act on behalf of Vidalia.  Bettye Jenkins testified that Rusty Jenkins is not an employee, officer, director, or shareholder of Vidalia, and that he "is not involved in [Vidalia's] business in any way."  (Vidalia's Evidentiary Submission in Support of Motion for

Summary Judgment, Ex. C, Bettye Jenkins Depo., at 20.)  As for Carla Jenkins, Vidalia

contends that, although she was an employee of Vidalia, "she had to obtain approval from

[Hyde] Jenkins and [Bettye] Jenkins before taking any action on behalf of Vidalia."

(Vidalia's Br. In Support, Doc. 32, at 12.)  However, Hyde Jenkins's deposition testimony

calls that assertion into question.   Mr. Jenkins testified that Vidalia's board of directors

was made up of "myself and the two kids," and that they were both integral parts of the

decision making process at Vidalia.  (Vidalia's Evidentiary Submission in Support of

Motion for Summary Judgment, Ex. Q, Hyde Jenkins Depo., at 19.)  He stated:

> Q:   Who was primarily responsible on behalf of Vidalia for negotiating that contract [with Red Rock]?
> A:   Rusty and Carla.
> . . .
> Q:   Does Rusty have the authority to negotiate contracts on behalf of Vidalia?
> A:   Not – let me put it this way.  He's supposed to go find out about it, yeah.
> Q:   Okay.  The final decision is yours?
> A:   Not the final decision.  We have a meeting that all of us agree on that –
> Q:   Okay.  So, Rusty can enter into preliminary negotiations?  He can find out about what the deal is and bring you the terms?
> A:   Right.
> Q:   And then, the group of the four of you – you and your wife and your two children sit around and make the final decision?
> A:   That's right.

(Id., at 41-42.)  Furthermore, when asked about the September 3, 2004 letter from Rusty

Jenkins to Kathy Love, which informed United Land about this lawsuit and requested that

Red Rock be locked out of its leased property, Mr. Jenkins testified:

11

Q:    Do you remember signing this letter?
A:    No, I don't.
Q:    Did you read the letter before you put your name on it?
A:    No, I didn't.
Q:    What did you understand that the letter was supposed to do?
A:    I didn't – they told me to sign the letter, I just signed it.
Q:    Who told you to sign it?
A:    Rusty and Carla.
Q:    Okay.  Rusty and Carla just handed the letter to you and said sign it?
A:    That's right.
. . .
Q:    Mr. Jenkins, why did you sign the letter?
A:    Because the kids told me to sign it.
Q:    Okay.  Would you sign anything they asked you to sign?
A:    ***Well, concerning business.  I turned it over to them, yeah***.
Q:    Okay.  And then your dealings with Red Rock, had you turned your business over to Rusty and Carla?
A:    Yeah, as far as – I told them to handle the deals, yeah.

(Id., at 48-51.)  Hyde Jenkins also testified that Carla and Rusty were authorized to

negotiate with United Land on behalf of Vidalia:

Q:    Did you authorize anybody on behalf of Vidalia Dock to negotiate with United Land Corporation?
A:    Well, Rusty and Carla was taking care of that business.  I would say they were authorized.
Q:    Okay.  You think they were authorized to negotiate on behalf of Vidalia?
A:    They were just handling the business, but I didn't specifically say, "Y'all go negotiate a contract."

(Id., at 63.)[4]

Hyde Jenkins's testimony indicates that he understood the negotiations and

_____

[4] The court will not discuss all the evidence which lead to this conclusion.  The evidence is discussed at length in the briefs submitted by counsel.  The court discussed the additional evidence, not mentioned in this Opinion, with counsel during oral argument.

12

communications with United Land to be about Vidalia business.  Kathy Love indicated that she understood Carla and Kenneth Lilliman to be negotiating with United Land for the rights to "Bessie Mines" on behalf of Vidalia, so that Vidalia would not lose its contract to sell red rock to Martin Marietta.  (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. J, Kathy Love Depo., at 57-60.)  The September 10, 2004 intent letter from Kathy Love to Carla Jenkins, Hyde Jenkins, Rusty Jenkins, and others, stated: "'**Vidalia Dock and Storage**' . . . is currently in negotiations with United Land Corporation . . ."  (Vidalia's Evidentiary. Submission in Support of Motion for Summary Judgment, Ex. S.)  And, all of the communications between Carla, Rusty and United Land were faxed to and from Vidalia's offices.

Considering the evidence discussed above, the court is of the opinion that Red Rock and Shepard have presented substantial evidence from which a reasonable jury could conclude that Rusty Jenkins and Carla Jenkins were agents of Vidalia, with actual authority to act on its behalf with regard to the dealings between Vidalia, the Jenkins and United Land.  Therefore, to the extent it moves for summary judgment based on lack of agency, Vidalia's Motion will be denied.

### 2.      Intentional Interference with Business or Contractual Relations

The elements of a cause of action for intentional interference with contractual or business relations are: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by

the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a result of the defendant's interference.  *McFarlin v. Conseco Services*, *LLC*, 381 F.3d 1251 (11th Cir. 2004). "Generally, whether the defendant is justified in the interference is a question to be resolved by the trier of fact." *Chalal v. Northwest Med. Center, Inc.*, 147 F.Supp.2d 1160, 1176 (N.D. Ala. 2000), *aff'd*, 240 F.3d 759 (11th Cir.), *cert. denied*, 534 U.S. 891 (2001). Further, "whether the means of interference used was wrongful or improper and, therefore, unjustified, is generally a question of fact." *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 459 (Ala. 2004).

Vidalia argues that Red Rock and Shepard have failed to satisfy two elements of their claim: they have not established that Vidalia took any action that interfered with the defendants' business relationship with United Land; and they have not established that any damages Red Rock suffered were proximately caused by Vidalia.

The primary events that Red Rock and Shepard contend interfered with their business relations with United Land are as follows:

**Aug. 18:**   Rusty Jenkins sent a lengthy letter to Kathy Love at United Land, on behalf of Carla Jenkins, Hyde D. Jenkins, and himself, as minority stockholders of Red Rock USA, LLC, to inform her of the "myriad of gross irregularities in the operation and management of the company by the managing partner, Lonnie Shepard, Sr." (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment, Ex. M.)

**Sept. 1**:   Carla Jenkins and Kenneth Lilliman traveled to Birmingham and met with Kathy Love to discuss the problems outlined in the August 18 letter. (Id., Ex. J, Kathy Love Depo., at 41-42.)

**Sept 3:**   Rusty Jenkins sent a letter, also signed by Carla Jenkins and Hyde

> Jenkins, to United Land to inform it on the progress of "our" lawsuit filed by Vidalia against Red Rock, as well as their intent to "file a cause of action that will place Red Rock USA, LLC into involuntary bankruptcy." (Id., Ex. N; Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Exs. 2, 3.) In their capacity as minority stockholders and "guarantors of most of the debts" they further requested that "the gate remain locked"so that they, and not Shepard, could see that the rock is barged out and the debts of Red Rock are paid (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment, Ex. N.) United Land complied with the request by locking the gate to the leased property so that Red Rock was unable to access the rock. (Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 14.)

**Sept. 9:** A letter signed by Carla Jenkins and Hyde Jenkins purporting to cancel Red Rock's mining lease with United Land is faxed from Vidalia's offices to United Land. (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment, Ex. P.)

**Sept. 10:** United Land faxed a letter to Carla Jenkins declaring the mining lease with Red Rock cancelled, per Carla's request. (Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 12.) On the same day, United Land signs and faxes to Carla Jenkins a letter of intent indicating that Vidalia Dock and Storage **"is currently in negotiations"** with United Land "to secure a permit for the removal of red rock from . . . 'Bessie Mines.'" (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment, Ex. R; Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 9.)

**Sept. 15:** Carla Jenkins and Kenneth Lilliman form Red Stone, LLC for the purpose of entering into a red rock mining lease with United Land. (Counterclaim, Doc. 10, at 7, ¶ 19; Ex. T.)

As was discussed at length above, there is evidence from which a jury could conclude that some or all of the actions taken by Carla Jenkins and Rusty Jenkins were taken on behalf of Vidalia. Therefore, the court finds that there is sufficient evidence from which a reasonable jury could find that Vidalia, by and through its agents, Carla and Rusty Jenkins, took actions which interfered with the business relationship between Red Rock and

15

United Land.

Counterclaim defendant Vidalia also contends, however, that even if Vidalia, by and through Carla and Rusty, did take actions which interfered with Red Rock's relationship with United Land, Red Rock and Shepard have not established that any damages suffered by Red Rock were proximately caused by those actions.  Rather, Vidalia argues, the cancellation of the lease agreement was caused by Mr. Shepard's mismanagement of the company.  (Vidalia's Br. in Support, Doc. 32, at 16.)

During her deposition, Ms. Love indicated several times that, prior to the campaign by Vidalia, United Land had been satisfied with Red Rock's performance under the mining lease and that Red Rock had paid all of the royalties owed to United Land under the lease. (Ex. J at 34-35, 51).  Furthermore, the only reasons for cancellation that United Land put in writing, as required by the mining lease, was the September 8, 2004 letter from Carla requesting cancellation.  (Ex. H at ¶ 2; Love Depo., Ex. J, at 68-70, 71-72; Ex. 12).  Ms. Love did testify that the lapse of Red Rock's insurance was of concern, but she also testified that she spoke with Mr. Shepard about it and that she had received a reinstatement.  (Love Depo., Ex. J, at 70-72.)

"Under Alabama law, a prima facie case for intentional interference with another's business is established by showing an intentional act of interference and some consequential harm to the plaintiff's business."  *Purcell Co., Inc. v. Spriggs Enterprises, Inc.*, 431 So.2d 515, 522 (Ala. 1983) (emphasis added); See also,  *KW Plastics v. U.S. Can Co.*, 131

F.Supp.2d 1265, 1268 (M.D. Ala. 2001) (permissible categories of damages recoverable for intentional interference include "(1) the pecuniary loss of the benefits of the contract or the prospective relation; (2) consequential losses for which the interference is a legal cause; and (3) emotional distress or actual harm to reputation if either is reasonably to be expected to result from the interference.").

There is no dispute that United Land canceled Red Rock's mining lease at least in part because of Carla and Rusty's communications with United Land.  (Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 12).  There is also no dispute that Red Rock's mining lease with United Land was a valuable asset of the company.  (Ex. 4 at 121; Ex. 13 at 15).   Any remaining questions regarding the proximate cause of Red Rock's damages and whether Red Rock had the financial wherewithal to profit from the lease are inappropriate for resolution by summary judgment.  See *Manufacturing Research Corp. v. Greenlee Tool Company*, 693 F.2d 1037, 1041 (11th Cir. 1982) (evidence was for jury on question of damages sustained by original manufacturer in its action against subsequent manufacturer for intentional interference with business relations).   For the forgoing reasons, the court finds there is sufficient evidence on which a reasonable jury could find that Vidalia is liable for intentionally interfering with the contract between United Land and Red Rock.  Therefore, Vidalia's Motion for Summary Judgment on Red Rock's and Shepard's intentional interference claim will be denied.

### 3.    Civil Conspiracy

At oral argument, counsel for Red Rock and Shepard stated that if summary judgment was denied on counterclaim plaintiffs' intentional interference with business relations claim, they would not oppose a dismissal of their conspiracy claim.  Therefore, this claim will be dismissed without prejudice.

### 4.    Abuse of Process

To establish a claim for abuse of process, a plaintiff must prove: "(1) the existence of an ulterior purpose; (2) wrongful use of process; and (3) malice."  *Willis v. Parker*, 814 So.2d 857, 865 (Ala. 2001).  See also *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1292 (11th Cir. 2001).  "[M]alice in an abuse of process case involves not ill will or meanness, but the goal of achieving some result not properly achieved by the process undertaken."  *Id.* at 866.  "[I]n an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause."  *Drill Parts and Service Co., Inc v. Joy Mfg. Co.*, 619 So.2d 1280, 1288 (Ala. 1993) (citation omitted).

"An abuse of process action 'presupposes an originally valid and regular process, duly and properly issued, and the validity of the process is no defense to an action for its abuse.'"  *Warwick Development Co., Inc. v. GV Corp.*, 469 So.2d 1270, 1274 (Ala. 1985). "Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party."  *Id.*  Evidence of acts undertaken by the defendant after

process was issued is "pertinent to establishing an ulterior purpose and a wrongful use of process." *U.S. Steel*, 261 F.3d at 1292 (citing *Shoney's, Inc. v. Barnett*, 773 So.2d 1015, 1024 (Ala.Civ.App. 1999) ("[t]he tort of abuse of process is concerned with the wrongful use of process after it has been issued.")).

Red Rock and Shepard contend that Vidalia wrongfully used the present civil action for the ulterior purpose of disparaging Red Rock and Shepard and undermining Red Rock's business relationship with United Land.  They argue, and the court agrees, that an ulterior purpose can be inferred from evidence that Vidalia filed the present action less than ninety days after the first invoice was due to be paid, (Vidalia's Evidentiary Submission in Support of Motion for Summary Judgment, Ex. I), for an amount greatly in excess of the debt allegedly owed by Red Rock, (Id., Ex. E, Lonnie Shepard Depo., at 213-18), and then immediately sent a copy of the Complaint in this case to United Land more than two weeks before serving it on Red Rock and Shepard, (Vidalia's Evidentiary Submission in Support of Summary Judgment, Ex. N), along with a letter in which Vidalia's alleged agents notified United Land of their intention to force Red Rock into involuntary bankruptcy.  (Id., Ex. J, Kathy Love Depo., at 27-28; Ex. N; Red Rock's and Shepard's Evidentiary Submission in Opposition to Summary Judgment, Ex. 3.)  Furthermore, there is evidence that Carla Jenkins and Kenneth Lilliman, on behalf of Vidalia, were simultaneously seeking a contract by which Vidalia would take over Red Rock's lease of "Bessie Mines" once it was

cancelled, in order to fulfill its existing contract to sell red rock to Martin Marietta.[5]

The court finds that there is evidence from which a reasonable jury could conclude that Vidalia had an ulterior purpose for its use of process in this case: to remove Red Rock USA, LLC from the red rock mining and distribution industry.  Therefore, Vidalia's Motion for Summary Judgment on Red Rock's and Shepard's claim for abuse of process will be denied.

## IV.   CONCLUSION

Based on the forgoing, the court finds that Vidalia's Motion to Strike, (doc. 44), is due to be denied, and that Vidalia's Motion for Summary Judgment, (doc. 31), is due to be denied in part.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 14th day of August, 2006.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

---

[5]  There is also evidence on which a jury could find that Carla and Lilliman were not negotiating on behalf of Vidalia.